**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

———————————————————————   x

ALEXA GROSSMAN, individually on                :
behalf of herself and all others similarly       :
situated,                                        :        Case No.
                                                 :
            Plaintiff,                           :
v.                                               :        **CLASS ACTION**
                                                 :            **COMPLAINT**
                                                 :
SIMPLY NOURISH PET FOOD COMPANY LLC and          :        <u>**JURY TRIAL DEMANDED**</u>
PETSMART, Inc.,                                  :
                                                 :
            Defendants.                          :
                                                 :
———————————————————————   x

Plaintiff, Alexa Grossman (hereinafter "Plaintiff"), individually and on behalf of all others

similarly situated, by her attorneys, alleges the following upon information and belief, except for

those allegations pertaining to Plaintiff, which are based on personal knowledge:

<u>**NATURE OF THE ACTION**</u>

1.      This action seeks to remedy the deceptive and misleading business practices of

Simply Nourish Pet Food Company LLC and PETSMART, Inc. (hereinafter "Defendants") with

respect to the marketing and sales of Defendants' Simply Nourish product line throughout the State

of New York and throughout the country.  The Simply Nourish product line includes the following

products (hereinafter the "Products"):

- Simply Nourish Adult Dog Food Lamb & Oatmeal

- Simply Nourish Limited Ingredient Diet Dog Food Venison & Sweet Potato;

- Simply Nourish Adult Dog Food Chicken & Brown Rice;

- Simply Nourish Essentials Adult Dog Food Beef and Vegetable;

- Simply Nourish Essentials Adult Dog Food Turkey, Sweet Potato & Cranberry;

1

- Simply Nourish Essentials Adult Dog Food Duck & Wild Rice;

- Simply Nourish Essentials Adult Dog Food Lamb & Carrot;

- Simply Nourish Limited Ingredient Diet Dog Food Salmon & Sweet Potato;

- Simply Nourish Essentials Adult Dog Food Chicken, Brown Rice & Vegetables;

- Simply Nourish Adult Dog Food Grain Free, Chicken with Peas & Potatoes;

- Simply Nourish Essentials Adult Dog Food Chicken, Vegetables & Quinoa;

- Simply Nourish Large Breed Adult Dog Food Chicken & Brown Rice;

- Simply Nourish Grain Free Large Breed Adult Dog Food Chicken with Peas & Potatoes;

- Simply Nourish Adult Dog Food Lamb & Oatmeal;

- Simply Nourish Limited Ingredient Diet Adult Dog Food Lamb & Pea;

- Simply Nourish Small Breed Adult Dog Food Chicken & Brown Rice;

- Simply Nourish Senior Dog Food Chicken & Brown Rice;

- Simply Nourish Limited Ingredient Diet Dog Food Grain Free Fish & Sweet Potato;

- Simply Nourish Healthy Weight Adult Dog Food Turkey & Brown Rice;

- Simply Nourish Chewy Dog Treat Chicken & Cheese;

- Simply Nourish Grain Free Small Breed Adult Dog Food Chicken with Peas & Potatoes;

- Simply Nourish Healthy Weight Large Breed Adult Dog Food Turkey & Brown Rice;

- Simply Nourish Limited Ingredient Diet Large Breed Dog Food Salmon & Sweet Potato;

- Simply Nourish Soft Chews Dog Treat Bacon & Cheese;

- Simply Nourish Soft Chews Dog Treat Chicken & Cheese;

- Simply Nourish Chewy Jerky Dog Treat Grain Free, Gluten Free Chicken;

- Simply Nourish Soft Chews Dog Treat Peanut Butter;

- Simply Nourish Limited Ingredient Diet Puppy Food Sweet Potato & Salmon;

- Simply Nourish Chewy Jerky Dog Treat Grain Free Chicken & Cranberry;

- Simply Nourish Grain Free Puppy Food Chicken with Peas & Potatoes;

- Simply Nourish Chewy Dog Treat Bacon & Cheese;

- Simply Nourish Healthy Weight Small Breed Adult Dog Food Turkey & Brown Rice;

- Simply Nourish Limited Ingredient Diet Senior Dog Food Sweet Potato & Salmon;

- Simply Nourish Puppy Food Chicken & Brown Rice;

- Simply Nourish Essentials Puppy Food Chicken, Brown Rice & Vegetables;

- Simply Nourish Limited Ingredient Diet Dog Food Grain Free Duck & Potato;

- Simply Nourish Small Breed Senior Dog Food Chicken & Brown Rice;

- Simply Nourish Large Breed Puppy Food Chicken & Brown Rice;

- Simply Nourish Chewy Jerky Dog Treat Grain Free Turkey & Sweet Potato;

- Simply Nourish Large Breed Senior Dog Food Chicken & Rice;

- Simply Nourish Limited Ingredient Diet Dog Food Duck & Potato;

- Simply Nourish Chewy Jerky Bites Dog Treat Grain Free Duck;

- Simply Nourish Small Breed Puppy Food Chicken & Brown Rice;

- Simply Nourish Limited Ingredient Diet Small Breed Dog Food Salmon & Sweet Potato;

- Simply Nourish Puppy Food Grain Free Chicken & Beef Stew;

3

- Simply Nourish Healthy Weight Small Breed Dog Food Turkey & Brown Rice;

- Simply Nourish Dog Food Grain Free Chicken & Beef Stew;

- Simply Nourish Limited Ingredient Diet Dog Food Turkey & Potato;

- Simply Nourish Dog Food Grain Free Chicken, Salmon & Sweet Potato Stew;

- Simply Nourish Dog Food Grain Free Chicken & Beef Stew;

- Simply Nourish Dog Food Chicken & Turkey Stew;

- Simply Nourish Dog Food Turkey Stew;

- Simply Nourish Grain Free Gluten Free Chewy Chicken Jerky Fillets Dog Treat;

- Simply Nourish Dog Food Grain Free Turkey & Duck Stew;

- Simply Nourish Dog Food Grain Free Chicken & Venison Stew;

- Simply Nourish Limited Ingredient Diet Small Breed Dog Food Duck & Potato;

- Simply Nourish Dog Food Grain Free Beef Stew;

- Simply Nourish Dog Food Chicken & Pasta Stew;

- Simply Nourish Puppy Food Chicken & Rice Stew;

- Simply Nourish Dog Food Chicken & Rice Stew;

- Simply Nourish Grain Free Gluten Free Chewy Duck Jerky Fillets Dog Treat;

- Simply Nourish Adult Cat Food Chicken & Rice;

- Simply Nourish Essentials Adult Cat Food Tuna;

- Simply Nourish Essentials Adult Cat Food Chicken Shredded;

- Simply Nourish Essentials Kitten Food Chicken;

- Simply Nourish Essentials Adult Cat Food Salmon;

- Simply Nourish Essentials Adult Cat Food Salmon Pate;

- Simply Nourish Essentials Adult Cat Food Chicken Pate;

4

- Simply Nourish Essentials Indoor Adult Cat Food Grain Free Chicken;

- Simply Nourish Essentials Adult Cat Food Tuna Pate;

- Simply Nourish Grain Free Adult Cat Food Chicken;

- Simply Nourish Kitten Food Chicken & Rice;

- Simply Nourish Healthy Weight Adult Cat Food Turkey & Rice;

- Simply Nourish Indoor Cat Food Chicken & Oatmeal;

- Simply Nourish Limited Ingredient Diet Cat Food Grain Free Duck & Pea;

- Simply Nourish Cat Food Grain Free Chicken Stew;

- Simply Nourish Grain Free Adult Cat Food Salmon & Pea;

- Simply Nourish Adult Cat Food Grain Free Turkey & Chicken Stew;

- Simply Nourish Cat Food Grain Free Chicken & Duck Stew;

- Simply Nourish Cat Food Grain Free Turkey, Salmon & Sweet Potato Stew;

- Simply Nourish Cat Food Grain Free Chicken & Salmon Stew;

- Simply Nourish Indoor Cat Food Turkey & Oatmeal;

- Simply Nourish Essentials Indoor Adult Cat Food Grain Free Tuna;

- Simply Nourish Cat Food Grain Free Tuna & Chicken Stew;

- Simply Nourish Indoor Cat Food Duck & Oatmeal;

- Simply Nourish Cat Food Grain Free Oceanfish Stew;

- Simply Nourish Cat Food Grain Free Tuna & Potato Stew;

- Simply Nourish Cat Food Grain Free Chicken & Rabbit Stew;

- Simply Nourish Indoor Cat Food Salmon & Oatmeal;

- Simply Nourish Senior Cat Food Chicken & Rice;

- Simply Nourish Essentials Kitten Food Chicken Pate;

- Simply Nourish Kitten Food Grain Free Turkey & Chicken;

- Simply Nourish Kitten Food Grain Free Chicken Stew;

- Simply Nourish Limited Ingredient Diet Cat Food Grain Free Duck & Sweet Potato;

- Simply Nourish Cat Food Grain Free Turkey Stew;

- Simply Nourish Limited Ingredient Diet Adult Cat Food Grain Free Chicken & Pea;

- Simply Nourish Limited Ingredient Diet Cat Food Grain Free Ocean Whitefish & Potato;

- Simply Nourish Limited Ingredient Diet Cat Food Salmon & Sweet Potato;

- Simply Nourish Limited Ingredient Diet Cat Food Chicken.

2.      Defendants manufacture, sell, and distribute the Products using a marketing and advertising campaign centered around claims that appeal to health-conscious consumers who want to keep their pets healthy by feeding them natural pet products, *i.e.*, that their Products are "Natural."  However, Defendants' advertising and marketing campaign is false, deceptive, and misleading because the Products contain non-natural, synthetic ingredients.

3.      Plaintiff and those similarly situated ("Class Members") relied on Defendants' misrepresentations that the Products are "Natural" when purchasing the Products.  Plaintiff and Class Members paid a premium for the Products over and above comparable pet products that did not purport to be "Natural" based upon their "Natural" representation.  Given that Plaintiff and Class Members paid a premium for the Products based on Defendants' misrepresentations that they are "Natural," Plaintiff and Class Members suffered an injury in the amount of the premium paid.

4.       Defendants' conduct violated and continues to violate, *inter alia*, New York General Business Law §§ 349 and 350, and the Magnuson-Moss Warranty Act.  Defendants breached and continue to breach their express warranties regarding the Products.  Defendants have been and continue to be unjustly enriched.  Accordingly, Plaintiff brings this action against Defendants on behalf of herself and Class Members who purchased the Products during the applicable statute of limitations period (the "Class Period").

## FACTUAL BACKGROUND

5.       Nearly 90 million dogs lived in households in the United States in 2017, and that number is steadily increasing.[1]

6.       As the pet food industry has grown, consumers have become increasingly concerned about the effects of synthetic and chemical ingredients in pet food.  Companies such as Defendants have capitalized on consumers' desires for purportedly "natural" pet food.  Indeed, consumers are willing to pay, and have paid, a premium for products "natural" over products that contain synthetic ingredients.  This trend has been particularly pronounced in the pet food industry. In 2017, for example, sales of "natural" pet foods topped $8.2 billion.[2]  Reasonable consumers,

---

[1] https://www.statista.com/statistics/198100/dogs-in-the-united-states-since-2000/

[2] https://www.petfoodindustry.com/articles/6299-us-natural-pet-food-market-sales-top-us82-billion?v=preview *Natural Products Industry Sales up 9.5% to $180bn Says NBJ,* FOOD NAVIGATOR, http://www.foodnavigator-usa.com/Markets/EXPO-WEST-trendspotting-organics-natural-claims/(page)/6; *see also* Shoshanna Delventhal, *Study Shows Surge in Demand for "Natural" Products*, INVESTOPEDIA (February 22, 2017), http://www.investopedia.com/articles/investing/022217/study-shows-surge-demand-natural-products.asp (Study by Kline Research indicated that in 2016, the personal care market reached 9% growth in the U.S. and 8% in the U.K. The trend-driven natural and organic personal care industry is on track to be worth $25.1 million by 2025); *Natural living: The next frontier for growth? [NEXT Forecast 2017]*, NEW HOPE NTWORK (December 20, 2016), http://www.newhope.com/beauty-and-lifestyle/natural-living-next-frontier-growth-next-forecast-2017.

including Plaintiff and Class Members, value natural products for important reasons, including the

belief that they are safer and healthier than alternative products that are not represented as natural.

7.    Despite the Products containing a number of synthetic ingredients, Defendants

market the Products as being "Natural."  A sample of the Products' labeling is depicted below:

**Simply Nourish Adult Dog Food Lamb & Oatmeal**





**Synthetic Ingredients:**

Mixed Tocopherols
Potassium Chloride
Manganese Sulfate
Niacin
Riboflavin
Thiamine Mononitrate
Folic Acid
Citric Acid

**Simply Nourish Limited Ingredient Diet Dog Food Venison & Sweet Potato**



**Synthetic Ingredients:**

Potassium Chloride
Thiamine Mononitrate
Riboflavin
Niacin
Folic Acid

**Simply Nourish Adult Dog Food Chicken & Brown Rice**



**Synthetic Ingredients:**

Manganese Sulfate
Calcium Carbonate
Niacin
Riboflavin
Thiamine Mononitrate
Folic Acid

**Simply Nourish Grain Free Large Breed Adult Dog Food Chicken with Peas & Potatoes**



**Synthetic Ingredients:**

Dicalcium Phosphate
Ascorbic Acid
Niacin
Riboflavin
Thiamine Mononitrate
Folic Acid
Manganese Sulfate
Calcium Carbonate
Potassium Chloride

**Simply Nourish Puppy Food Grain Free Chicken & Beef Stew**



**Synthetic Ingredients:**

Tricalcium Phosphate
Potassium Chloride *
Calcium Carbonate
Thiamine Mononitrate
Niacin
Riboflavin
Folic Acid
Zinc Oxide
Manganese Sulfate
Xanthan Gum

**Simply Nourish Grain Free Gluten Free Chewy Chicken Jerky Fillets Dog Treat**



**Synthetic Ingredients:**

Vegetable Glycerin

14

**Simply Nourish Essentials Adult Cat Food Tuna**



**Synthetic Ingredients:**

Calcium Carbonate
Potassium Chloride
Thiamine Mononitrate
Niacin
Riboflavin
Folic Acid
Zinc Oxide
Manganese Sulfate

**Simply Nourish Grain Free Adult Cat Food Chicken**



**Synthetic Ingredients:**

Niacin
Thiamine Mononitrate
Riboflavin
Folic Acid
Dicalcium Phosphate
Manganese Sulfate
Calcium Carbonate
Potassium Chloride

16

**Simply Nourish Kitten Food Chicken & Rice**



**Synthetic Ingredients:**

Niacin
Thiamine Mononitrate
Riboflavin
Folic Acid
Potassium Chloride
Manganese Sulfate
Calcium Carbonate

8.      Defendants' representations that the Products are "Natural" is false, misleading, and deceptive because the Products contain multiple ingredients that are, as explained below, synthetic.

17

a.   **Niacin** (C6H5NO2, CAS Reg. No. 59-67-6) is the chemical 3-pyridinecarboxylic acid (nicotinic acid).  It is a non-hygroscopic, stable, white, crystalline solid that sublimes without decomposition at about 230 deg. C.  It is soluble in water and alcohol.  It is insoluble in ether.  See 21 C.F.R. § 184.1530.  Niacin is synthetic.

b.   **Thiamine Mononitrate** (C12H17N5O4S, CAS Reg. No. 532-43-4) is the mononitrate salt of thiamine.  It occurs as white crystals or a white crystalline powder and is prepared from thiamine hydrochloride by dissolving the hydrochloride salt in alkaline solution followed by precipitation of the nitrate half-salt with a stoichiometric amount of nitric acid."  *See* 21 C.F.R. § 184.1878.  Thiamine mononitrate is synthetic, and is chemically distinct from thiamine.  *See* 47 Fed. Reg. 47438; 21 C.F.R. § 184.1878.

The amount of nitrates added to processed and preserved foods over the past several decades has exponentially increased.

The nitrates present in thiamine mononitrate can cause health problems.  "Exposure to higher levels of nitrates or nitrites has been associated with increased incidence of cancer in adults, and possible increased incidence of brain tumors, leukemia, and nasopharyngeal (nose and throat) tumors in children[.]" *Id.* (internal citations omitted).  Some studies have linked nitrate exposure in children to increased incidence of childhood diabetes, recurrent diarrhea and recurrent respiratory tract infections.  *See id*. at 3.  Other reported effects of chronic exposure reported in adults include frequent urination and spleen hemorrhaging.  *See id*. at 3.  "Health effects that were significantly associated with nitrate or nitrite exposure during pregnancy include increased incidence of intrauterine growth retardation, cardiac

defects, central nervous system defects, Sudden Infant Death Syndrome (SIDS), and miscarriage." *See id*. at 4 (internal citations omitted). Research has also connected the increased use of nitrates and nitrites in western societies with increased rates of cognitive impairment, Alzheimer's disease, and brain insulin resistance.

c. **Riboflavin** (C17H20N4O6, CAS Reg. No. 83885) occurs as yellow to orange yellow needles that are crystallized from 2N acetic acid, alcohol, water, or pyridine. It may be prepared by chemical synthesis, biosynthetically by the organism Eremothecium ashbyii, or isolated from natural sources. *See* 21 C.F.R. § 184.1695. Further, as set forth in 21 C.F.R. § 73.450, riboflavin is a color additive. Riboflavin is synthetic.

d. **Citric Acid** is (2-hydroxy-propane-1, 2,3-tricarboxylic acid) is a synthetic substance. While the chemical's name has the word "citric" in it, citric acid is no longer extracted from the citrus fruit but industrially manufactured by fermenting certain genetically mutant strains of the black mold fungus, *Aspergillus niger*.

e. **Tocopherol (Tocopheryl Acetate)** is a synthetic, inert ingredient used pre and post-harvest as an ingredient in pesticide formulations applied to growing crops or to raw agricultural commodities after harvest. *See* 40 C.F.R. §180.910.

f. **Calcium Carbonate** is produced from calcium hydroxide, calcium chloride, or as a byproduct in the lime soda process. Federal regulations recognize calcium hydroxide as a synthetic compound (and the FDA has declared that calcium

chloride renders a food no longer "natural").[3]  The lime soda process employs hazardous and synthetic substances and requires processing techniques so excessive so as to render the finished product unnatural.  In fact, the EPA has promulgated regulations specifically addressing the environmental impact of calcium carbonate produced through the lime process and by recovery from the Solvay waste products.  Additionally, when used in drugs, calcium carbonate is listed as a synthetic compound by federal regulation.

g.    **Folic Acid** is the chemical N -[4-<(2-amino-1,4-dihydro-4-oxo-6-pteridinyl)methyl]amino]benzoyl]-L -glutamic acid.  See 21 C.F.R. 172.345.  Folic acid is synthetic.

h.    **Manganese Sulfate** is obtained by reacting manganese compound with sulfuric acid or as a byproduct in the manufacture of hydroquinone.  *See* 21 C.F.R. 184.1461.

i.    **Ascorbic Acid** is a chemical preservative and is synthetic.  *See* 21 C.F.R. § 182.3013.

j.    **Xanthan Gum** is a polysaccharide derived from the fermentation of sugars by anthomonas campeseri bacterium and purification using isopropyl alcohol.  It is listed as a synthetic ingredient by federal regulation and is typically used as a thickening or stabilizing agent in beverages and as emulsifiers in salad dressings. *See* 7 C.F.R. § 205.605(b).  A 2012 article in the Journal of Pediatrics noted that

---

[3] *See* FDA Warning Letter to Karl A. Hirzel, Hirzel Canning Co. (Aug. 29, 2001).

the U.S. Food & Drug Administration issued warnings that products containing xanthan gum have been linked to illness and death in infants.[4]

k.   **Potassium Chloride** is a white, odorless solid prepared from source minerals by fractional crystallization or flotation.  It is soluble in water and glycerol and has a saline taste at low concentration levels.  *See* 21 C.F.R. § 184.1622.

l.   **Tricalcium Phosphate** is a synonym for calcium phosphate tribasic.  It has an international numbering system for food additives ("INS") of 341 (iii).  It consists of a variable mixture of calcium phosphates with an approximate chemical composition of 10CAO.3P205.H20.  It is a recognized synthetic chemical under federal regulations.  *See* 7 C.F.R. §205.605(b).

m.   **Dicalcium Phosphate** is derived from bovines by precipitating the phosphate extracted from a very high grade of bone by the use of high grade chemical lime.[5]  It is a recognized synthetic chemical under federal regulations.  *See* 7 C.F.R. §205.605(b).

n.   **Zinc Oxide** is a synthetic compound.  *See, e.g.*, 7 C.F.R. § 205.601(j)(6)(ii).  Zinc oxide used in commercial purposes is usually produced by chemical synthesis or by vaporizing metallic zinc at extreme high heat.

o.   **Glycerin (Vegetable)** is a factory-produced texturizer that is created by complex processing.  It is recognized by federal regulations as synthetic.  *See* 7 C.F.R. § 205.605(b).  It is commonly used as a filler and thickening agent.  It requires

---

[4] Jennifer Beal, MPH et al., *Late Onset Necrotizing Enterocolitis in Infants Following Use of a Xanthan Gum-Containing Thickening Agent*, 161 THE JOURNAL OF PEDIATRICS 2, 354 (2012).
[5] https://kb.osu.edu/dspace/bitstream/handle/1811/60894/OARDC_bulletin_n455.pdf?sequence=1

multiple processing steps in an industrial environment to create Glycerin. Therefore, it cannot be described as "natural." A technical evaluation report compiled by the USDA AMS Agricultural Analytics Division for the USDA National Organic Program explains that Glycerin is "produced by a hydrolysis of fats and oils" and is listed in the USDA Organic Program's National List as a "synthetic nonagricultural (nonorganic) substance." The same report lists several methods of producing Glycerin, each of which involve numerous steps that include the use of high temperatures and pressure and purification to get an end product.

| Processes for producing glycerin by hydrolysis of fats and oils[6] | |
|---|---|
| Lemmens Fryer's Process | Oil or fat is subjected in an autoclave to the conjoint action of heat and pressure (about 100 PSI) in the presence of an emulsifying and accelerating agent, e.g. zinc oxide or hydroxide (sodium hydroxide can be substituted) for about eight hours. The strong solution of glycerin formed is withdrawn and replaced by a quantity of hot, clean and preferably distilled water equal to about one third to one fourth of the weight of the original charge of oil or fat and treatment continued for an additional four hours. The dilute glycerin obtained from the latter part of the process is drawn off and used for the initial treatment of the further charge of oil or fat. |
| Budde and Robertson's Process | The oils or fats are heated and mechanically agitated with water and sulphuric acid gas, under pressure in a closed vessel or autoclave. The advantage claimed for the process are that the contents of the vessel are free from foreign matter introduced by reagents and |

---

[6]https://www.ams.usda.gov/sites/default/files/media/Glycerin%20Petition%20to%20remove%20TR%202013.pdf

| | |
|---|---|
| | need no purification; that the liberated glycerin is in the form of a pure and concentrated solution; that no permanent emulsion is formed and that the fatty acids are not discolored. |
| Ittner's Process | Coconut oil is kept in an autoclave in the presence of water at 70 atmospheres pressure and 225-245oC temperature and split into fatty acids and glycerin, both being soluble under these conditions in water. The glycerin solution separates in the bottom of the autoclave. The aqueous solution contains at the end of the splitting process more than 30 percent glycerin. |
| Continuous High-Pressure Hydrolysis | In this process a constant flow of fat is maintained flowing upward through an autoclave column tower against a downward counterflow of water at a pressure of 600 PSI maintained at temperature of 480-495oF. Under these conditions, the fat is almost completely miscible in water and the hydrolysis take place in a very short time. The liberated fatty acids, washed free of glycerin by the downward percolating water, leave the top of the column and pass through a flash tank while the liberated glycerin dissolves in the downward flow of water and is discharged from the bottom of the tower into the sweet-water storage tank. |

9.     Whether Defendants' labeling of the Products as "Natural" is deceptive is judged by whether it would deceive or mislead a reasonable person. To assist in ascertaining what a reasonable consumer believes the term natural means, one can look to the regulatory agencies for their guidance.

10.     In 2013, the United States Department of Agriculture ("USDA") issued a Draft Guidance Decision Tree for Classification of Materials as Synthetic or Nonsynthetic (Natural). In

accordance with this decision tree, a substance is natural—as opposed to synthetic—if: (a) it is manufactured, produced, or extracted from a natural source (i.e. naturally occurring mineral or biological matter); (b) it has not undergone a chemical change (i.e. a process whereby a substance is transformed into one or more other distinct substances) so that it is chemically or structurally different than how it naturally occurs in the source material; or (c) the chemical change was created by a naturally occurring biological process such as composting, fermentation, or enzymatic digestion or by heating or burning biological matter. *See* **Exhibit A.**

11.    Congress has defined "synthetic" to mean "a substance that is formulated or manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plants, animals, or mineral sources . . ." 7 U.S.C. § 6502 (21).

12.    Consumers lack the meaningful ability to test or independently ascertain or verify whether a product is natural, especially at the point of sale. Consumers would not know the true nature of the ingredients merely by reading the ingredients label.

13.    Discovering that the ingredients are not natural and are actually synthetic requires a scientific investigation and knowledge of chemistry beyond that of the average consumer. That is why, even though the ingredients listed above are identified on the back of the Products' packaging in the ingredients listed, the reasonable consumer would not understand – nor are they expected to understand - that these ingredients are synthetic.

14.    Moreover, the reasonable consumer is not expected or required to scour the ingredients list on the back of the Products in order to confirm or debunk Defendants' prominent claims, representations, and warranties that the Products are "Natural."

15.    Defendants did not disclose that the above listed ingredients are synthetic ingredients. A reasonable consumer understands Defendants' "Natural" claims to mean that the

Products are "Natural" and do not contain synthetic ingredients.

16.    Defendants have thus violated, *inter alia*, NY General Business Law § 392-b by: (a) putting upon an article of merchandise, bottle, wrapper, package, label or other thing, containing or covering such an article, or with which such an article is intended to be sold, or is sold, a false description or other indication of or respecting the kind of such article or any part thereof; and (b) selling or offering for sale an article, which to their knowledge is falsely described or indicated upon any such package, or vessel containing the same, or label thereupon, in any of the particulars specified.

17.    Consumers rely on label representations and information in making purchasing decisions.

18.    The marketing of the Products as "Natural" in a prominent location on the labels of all of the Products, throughout the Class Period, evidences Defendants' awareness that "Natural" claims are material to consumers.

19.    Defendants' deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.

20.    Plaintiff and the Class members reasonably relied to their detriment on Defendants' misleading representations and omissions.

21.    Defendants' false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the Class members.

22.    In making the false, misleading, and deceptive representations and omissions described herein, Defendants knew and intended that consumers would pay a premium for

25

Products labeled "Natural" over comparable products not so labeled.

23.    As an immediate, direct, and proximate result of Defendants' false, misleading, and deceptive representations and omissions, Defendants injured Plaintiff and the Class members in that they:

a.    Paid a sum of money for Products that were not what Defendants represented;

b.    Paid a premium price for Products that were not what Defendants represented;

c.    Were deprived of the benefit of the bargain because the Products they purchased were different from what Defendants warranted;

d.    Were deprived of the benefit of the bargain because the Products they purchased had less value than what Defendants represented;

e.    Had their pets ingest a substance that was of a different quality than what Defendants promised; and

f.    Were denied the benefit of the beneficial properties of the natural foods for their pets that Defendants promised.

24.    Had Defendants not made the false, misleading, and deceptive representations and omissions, Plaintiff and the Class members would not have been willing to pay the same amount for the Products they purchased.

25.    Plaintiff and the Class members paid for Products that were "Natural" but received Products that were not "Natural."  The Products Plaintiff and the Class members received were worth less than the Products for which they paid.

26.    Plaintiff and the Class members all paid money for the Products.  However, Plaintiff and the Class members did not obtain the full value of the advertised Products due to Defendants' misrepresentations and omissions.  Plaintiff and the Class members purchased, purchased more of, and/or paid more for, the Products than they would have had they known the truth about the

Products.  Consequently, Plaintiff and the Class members have suffered injury in fact and lost money as a result of Defendants' wrongful conduct.

## JURISDICTION AND VENUE

27.    This Court has subject matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. section 1332(d) in that: (1) this is a class action involving more than 100 class members; (2) Plaintiff is a citizen of the State of New York, Defendant Simply Nourish Pet Food Company LLC is a citizen of the State of Arizona; Defendant PETSMART, Inc. a citizen of the States of Arizona and Delaware; and (3) the amount in controversy is in excess of $5,000,000, exclusive of interests and costs.

28.    This Court has personal jurisdiction over Defendants because Defendants conduct and transact business in the State of New York, contract to supply goods within the State of New York, and supply goods within the State of New York.

29.    Venue is proper because Plaintiff and many Class Members reside in the Eastern District of New York, and throughout the State of New York.  A substantial part of the events or omissions giving rise to the classes' claims occurred in this District.

## PARTIES

**Plaintiff**

30.    Plaintiff is an individual consumer who, at all times material hereto, was a citizen of the State of New York, Suffolk County, Long Island.  During the last two years Plaintiff purchased Simply Nourish large breed dog foods and Simply Nourish dog treats from PetSmart in Commack, Long Island.  The packaging of the Products Plaintiff purchased contained the representation that they were "Natural." Plaintiff believes that products that are labeled "Natural" do not contain synthetic ingredients.  Plaintiff believes a synthetic ingredient is formulated or

manufactured by a chemical process or by a process that chemically changes a substance extracted from naturally occurring plant, animal, or mineral sources. If the Products were actually "Natural," as represented on the Products' label, Plaintiff would purchase the Products in the immediate future.

31.    Had Defendants not made the false, misleading, and deceptive representation that the Products were "Natural," Plaintiff would not have been willing to pay the same amount for the Products, and, consequently, would not have been willing to purchase the Products. Plaintiff purchased, purchased more of, and/or paid more for, the Products than she would have had she known the truth about the Products. Since the Products Plaintiff received were worth less than the Products for which she paid, Plaintiff was injured in fact and lost money as a result of Defendants' improper conduct.

**Defendants**

32.    Defendant Simply Nourish Pet Food Company LLC is a corporation with its principal place of business in Phoenix, Arizona. Defendant manufactures, markets, advertises and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Products.

33.    Defendant PETSMART, Inc. is a corporation with its principal place of business in Phoenix, Arizona. Defendant manufactures, markets, advertises and distributes the Products throughout the United States. Defendant created and/or authorized the false, misleading and deceptive advertisements, packaging and labeling for the Products.

## CLASS ALLEGATIONS

34.    Plaintiff brings this matter on behalf of herself and those similarly situated. As detailed at length in this Complaint, Defendants orchestrated deceptive marketing and labeling

28

practices. Defendants' customers were uniformly impacted by and exposed to this misconduct. Accordingly, this Complaint is uniquely situated for class-wide resolution, including injunctive relief.

35.    The Class is defined as all consumers who purchased the Products anywhere in the United States during the Class Period.

36.    Plaintiff also seeks certification, to the extent necessary or appropriate, of a subclass of individuals who purchased the Products in the State of New York at any time during the Class Period (the "New York Subclass").

37.    The Class and New York Subclass shall be referred to collectively throughout the Complaint as the Class.

38.    The Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

39.    Numerosity: Class Members are so numerous that joinder of all members is impracticable. Plaintiff believes that there are thousands of consumers who are Class Members described above who have been damaged by Defendants' deceptive and misleading practices.

40.    Commonality: The questions of law and fact common to the Class Members which predominate over any questions which may affect individual Class Members include, but are not limited to:

a.    Whether Defendants are responsible for the conduct alleged herein which was uniformly directed at all consumers who purchased the Products;

b.    Whether Defendants' misconduct set forth in this Complaint demonstrates that Defendants have engaged in unfair, fraudulent, or unlawful business practices with

respect to the advertising, marketing, and sale of their Products;

c.     Whether Defendants made false and/or misleading statements to the Class and the public concerning the contents of their Products;

d.     Whether Defendants' false and misleading statements concerning their Products were likely to deceive the public;

e.     Whether Plaintiff and the Class are entitled to injunctive relief; and

f.     Whether Plaintiff and the Class are entitled to money damages under the same causes of action as the other Class Members.

41.     <u>Typicality</u>: Plaintiff is a member of the Class.  Plaintiff's claims are typical of the claims of each Class Member in that every member of the Class was susceptible to the same deceptive, misleading conduct and purchased Defendants' Products.  Plaintiff is entitled to relief under the same causes of action as the other Class Members.

42.     <u>Adequacy</u>: Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class Members she seeks to represent; her consumer fraud claims are common to all members of the Class and she has a strong interest in vindicating her rights; she has retained counsel competent and experienced in complex class action litigation and they intend to vigorously prosecute this action.

43.     <u>Predominance</u>: Pursuant to Rule 23(b)(3), the common issues of law and fact identified above predominate over any other questions affecting only individual members of the Class.  The Class issues fully predominate over any individual issue because no inquiry into individual conduct is necessary; all that is required is a narrow focus on Defendants' deceptive and misleading marketing and labeling practices.

44.    <u>Superiority</u>: A class action is superior to the other available methods for the fair and efficient adjudication of this controversy because:

a.    The joinder of thousands of individual Class Members is impracticable, cumbersome, unduly burdensome, and a waste of judicial and/or litigation resources;

b.    The individual claims of the Class Members may be relatively modest compared with the expense of litigating the claim, thereby making it impracticable, unduly burdensome, and expensive—if not totally impossible—to justify individual actions;

c.    When Defendants' liability has been adjudicated, all Class Members' claims can be determined by the Court and administered efficiently in a manner far less burdensome and expensive than if it were attempted through filing, discovery, and trial of all individual cases;

d.    This class action will promote orderly, efficient, expeditious, and appropriate adjudication and administration of Class claims;

e.    Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action;

f.    This class action will assure uniformity of decisions among Class Members;

g.    The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation;

h.    Class Members' interests in individually controlling the prosecution of separate actions is outweighed by their interest in efficient resolution by single class action; and

31

i.      It would be desirable to concentrate in this single venue the litigation of all plaintiffs who were induced by Defendants' uniform false advertising to purchase their Products as being "Natural."

45.     Accordingly, this Class is properly brought and should be maintained as a class action under Rule 23(b)(3) because questions of law or fact common to Class Members predominate over any questions affecting only individual members, and because a class action is superior to other available methods for fairly and efficiently adjudicating this controversy.

## INJUNCTIVE CLASS RELIEF

46.     Rules 23(b)(1) and (2) contemplate a class action for purposes of seeking class-wide injunctive relief.  Here, Defendants have engaged in conduct resulting in misleading consumers about ingredients in their Products.  Since Defendants' conduct has been uniformly directed at all consumers in the United States, and the conduct continues presently, injunctive relief on a class-wide basis is a viable and suitable solution to remedy Defendants' continuing misconduct.  Plaintiff would purchase the Products again if the ingredients were changed so that they indeed were "Natural."

47.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(a), satisfying the class action prerequisites of numerosity, commonality, typicality, and adequacy because:

a.      Numerosity: Individual joinder of the injunctive Class Members would be wholly impracticable.  Defendants' Products have been purchased by thousands of people throughout the United States;

b.      Commonality: Questions of law and fact are common to members of the Class. Defendants' misconduct was uniformly directed at all consumers.  Thus, all

32

members of the Class have a common cause against Defendants to stop their misleading conduct through an injunction. Since the issues presented by this injunctive Class deal exclusively with Defendants' misconduct, resolution of these questions would necessarily be common to the entire Class. Moreover, there are common questions of law and fact inherent in the resolution of the proposed injunctive class, including, *inter alia*:

    i.      Resolution of the issues presented in the 23(b)(3) class;

    ii.      Whether members of the Class will continue to suffer harm by virtue of Defendants' deceptive product marketing and labeling; and

    iii.      Whether, on equitable grounds, Defendants should be prevented from continuing to deceptively mislabel their Products as being "Natural."

c.    <u>Typicality</u>: Plaintiff's claims are typical of the claims of the injunctive Class because her claims arise from the same course of conduct (i.e. Defendants' deceptive and misleading marketing, labeling, and advertising practices). Plaintiff is a typical representative of the Class because, like all members of the injunctive Class, she purchased Defendants' Products, which were sold unfairly and deceptively to consumers throughout the United States.

d.    <u>Adequacy</u>: Plaintiff will fairly and adequately represent and protect the interests of the injunctive Class. Her consumer protection claims are common to all members of the injunctive Class and she has a strong interest in vindicating her rights. In addition, Plaintiff and the Class are represented by counsel who is competent and experienced in both consumer protection and class action litigation.

48.     The injunctive Class is properly brought and should be maintained as a class action under Rule 23(b)(2) because Plaintiff seeks injunctive relief on behalf of the Class Members on grounds generally applicable to the entire injunctive Class.  Certification under Rule 23(b)(2) is appropriate because Defendants have acted or refused to act in a manner that applies generally to the injunctive Class (i.e. Defendants have marketed their Products using the same misleading and deceptive labeling to all of the Class Members).  Any final injunctive relief or declaratory relief would benefit the entire injunctive Class as Defendants would be prevented from continuing their misleading and deceptive marketing practices and would be required to honestly disclose to consumers the nature of the contents of their Products.  Plaintiff would purchase the Products again if the ingredients were changed so that they indeed were "Natural."

**FIRST CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 349**
**(On Behalf of Plaintiff and New York Subclass Members)**

49.     Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

50.     New York General Business Law Section 349 ("GBL § 349") declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade, or commerce or in the furnishing of any service in this state . . ."

51.     The conduct of Defendants alleged herein constitutes recurring, "unlawful" deceptive acts and practices in violation of GBL § 349, and as such, Plaintiff and the New York Subclass Members seek monetary damages and the entry of preliminary and permanent injunctive relief against Defendants, enjoining them from inaccurately describing, labeling, marketing, and promoting the Products.

52.     There is no adequate remedy at law.

53.     Defendants misleadingly, inaccurately, and deceptively advertise and market their Products to consumers.

54.     Defendants' improper consumer-oriented conduct—including labeling and advertising the Products as being "Natural" —is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendants' Products and to use the Products when they otherwise would not have. Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

55.     Plaintiff and the New York Subclass Members have been injured inasmuch as they paid a premium for products that were—contrary to Defendants' representations— not "Natural." Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

56.     Defendants' advertising and Products' packaging and labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Products and to pay a premium price for them.

57.     Defendants' deceptive and misleading practices constitute a deceptive act and practice in the conduct of business in violation of New York General Business Law §349(a) and Plaintiff and the New York Subclass Members have been damaged thereby.

58.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and the New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**VIOLATION OF NEW YORK GBL § 350**
**(On Behalf of Plaintiff and the New York Subclass Members)**

59. Plaintiff repeats and realleges each and every allegation contained in all the foregoing paragraphs as if fully set forth herein.

60. N.Y. Gen. Bus. Law § 350 provides, in part, as follows:

> False advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state is hereby declared unlawful.

61. N.Y. Gen. Bus. Law § 350a(1) provides, in part, as follows:

> The term 'false advertising, including labeling, of a commodity, or of the kind, character, terms or conditions of any employment opportunity if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity or employment to which the advertising relates under the conditions proscribed in said advertisement, or under such conditions as are customary or usual . . .

62. Defendants' labeling and advertisements contain untrue and materially misleading statements concerning Defendants' Products inasmuch as they misrepresent that the Products are "Natural."

63. Plaintiff and the New York Subclass Members have been injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products which were—contrary to Defendants' representations—not "Natural."  Accordingly, Plaintiff and the New York Subclass Members received less than what they bargained and/or paid for.

64. Defendants' advertising, packaging and products' labeling induced Plaintiff and the New York Subclass Members to buy Defendants' Products.

65.     Defendants made their untrue and/or misleading statements and representations willfully, wantonly, and with reckless disregard for the truth.

66.     Defendants' conduct constitutes multiple, separate violations of N.Y. Gen. Bus. Law § 350.

67.     Defendants made the material misrepresentations described in this Complaint in Defendants' advertising, and on the Products' packaging and labeling.

68.     Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large.  Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.

69.     As a result of Defendants' recurring, "unlawful" deceptive acts and practices, Plaintiff and New York Subclass Members are entitled to monetary, compensatory, treble and punitive damages, injunctive relief, restitution and disgorgement of all moneys obtained by means of Defendants' unlawful conduct, interest, and attorneys' fees and costs.

### THIRD CAUSE OF ACTION
### BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiff and All Class Members)**

70.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

71.     Defendants provided Plaintiff and Class Members with an express warranty in the form of written affirmations of fact promising and representing that the Products are "Natural."

72.     The above affirmations of fact were not couched as "belief" or "opinion," and were not "generalized statements of quality not capable of proof or disproof."

73.     These affirmations of fact became part of the basis for the bargain and were material to Plaintiff's and Class Members' transactions.

37

74.     Plaintiff and Class Members reasonably relied upon Defendants' affirmations of fact and justifiably acted in ignorance of the material facts omitted or concealed when they decided to buy Defendants' Products.

75.     Within a reasonable time after they knew or should have known of Defendants' breach, Plaintiff, on behalf of herself and Class Members, placed Defendants on notice of their breach, giving Defendants an opportunity to cure their breach, which they refused to do.

76.     Defendants breached the express warranty because the Products are not "Natural" because they contain synthetic ingredients.

77.     Defendants thereby breached the following state warranty laws:

        a.     Code of Ala. § 7-2-313;

        b.     Alaska Stat. § 45.02.313;

        c.     A.R.S. § 47-2313;

        d.     A.C.A. § 4-2-313;

        e.     Cal. Comm. Code § 2313;

        f.     Colo. Rev. Stat. § 4-2-313;

        g.     Conn. Gen. Stat. § 42a-2-313;

        h.     6 Del. C. § 2-313;

        i.     D.C. Code § 28:2-313;

        j.     Fla. Stat. § 672.313;

        k.     O.C.G.A. § 11-2-313;

        l.     H.R.S. § 490:2-313;

        m.     Idaho Code § 28-2-313;

        n.     810 I.L.C.S. 5/2-313;

o.      Ind. Code § 26-1-2-313;

p.      Iowa Code § 554.2313;

q.      K.S.A. § 84-2-313;

r.      K.R.S. § 355.2-313;

s.      11 M.R.S. § 2-313;

t.      Md. Commercial Law Code Ann. § 2-313;

u.      106 Mass. Gen. Laws Ann. § 2-313;

v.      M.C.L.S. § 440.2313;

w.      Minn. Stat. § 336.2-313;

x.      Miss. Code Ann. § 75-2-313;

y.      R.S. Mo. § 400.2-313;

z.      Mont. Code Anno. § 30-2-313;

aa.     Neb. Rev. Stat. § 2-313;

bb.     Nev. Rev. Stat. Ann. § 104.2313;

cc.     R.S.A. 382-A:2-313;

dd.     N.J. Stat. Ann. § 12A:2-313;

ee.     N.M. Stat. Ann. § 55-2-313;

ff.     N.Y. U.C.C. Law § 2-313;

gg.     N.C. Gen. Stat. § 25-2-313;

hh.     N.D. Cent. Code § 41-02-30;

ii.     II. O.R.C. Ann. § 1302.26;

jj.     12A Okl. St. § 2-313;

kk.     Or. Rev. Stat. § 72-3130;

ll.    13 Pa. Rev. Stat. § 72-3130;

mm.    R.I. Gen. Laws § 6A-2-313;

nn.    S.C. Code Ann. § 36-2-313;

oo.    S.D. Codified Laws, § 57A-2-313;

pp.    Tenn. Code Ann. § 47-2-313;

qq.    Tex. Bus. & Com. Code § 2.313;

rr.    Utah Code Ann. § 70A-2-313;

ss.    9A V.S.A. § 2-313;

tt.    Va. Code Ann. § 59.1-504.2;

uu.    Wash. Rev. Code Ann. § 6A.2-313;

vv.    W. Va. Code § 46-2-313;

ww.    Wis. Stat. § 402.313;

xx.    Wyo. Stat. § 34.1-2-313.

78.    As a direct and proximate result of Defendants' breach of express warranty, Plaintiff and Class Members were damaged in the amount of the price they paid for the Products, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
**VIOLATION OF THE MAGNUSON-MOSS**
**WARRANTY ACT, 15 U.S.C. § 2301 *et seq.***
**(On Behalf of Plaintiff and All Class Members)**

79.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

80.    Plaintiff brings this claim individually and on behalf of all members of the Class. Upon certification, the Class will consist of more than 100 named Plaintiffs.

81.   The Magnuson-Moss Warranty Act provides a federal remedy for consumers who have been damaged by the failure of a supplier or warrantor to comply with any obligation under a written warranty or implied warranty, or other various obligations established under the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*

82.   The Products are "consumer products" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(1).

83.   Plaintiff and other members of the Class are "consumers" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

84.   Defendants are "suppliers" and "warrantors" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4) & 2301(5).

85.   Defendants represented in writing that their Products are "Natural."

86.   These statements were made in connection with the sale of the Products and relate to the nature of the Products and affirm and promise that the Products are as represented and defect free and, as such, are "written warranties" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(6)(A).

87.   As alleged herein, Defendants breached the written warranty by selling consumers Products that are not "Natural."

88.   The Products do not conform to Defendants' written warranty and therefore violate the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*  Consequently, Plaintiff and the other members of the Class have suffered injury and are entitled to damages in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
## COMMON LAW UNJUST ENRICHMENT
### (On Behalf of Plaintiff and All Class Members in the Alternative)

89.     Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

90.     Plaintiff, on behalf of herself and consumers nationwide, bring a common law claim for unjust enrichment.

91.     Defendants' conduct violated, *inter alia*, state and federal law by manufacturing, advertising, marketing, and selling their Products while misrepresenting and omitting material facts.

92.     Defendants' unlawful conduct as described in this Complaint allowed Defendants to knowingly realize substantial revenues from selling their Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendants' benefit and enrichment.  Defendants have thereby violated fundamental principles of justice, equity, and good conscience.

93.     Plaintiff and Class Members conferred significant financial benefits and paid substantial compensation to Defendants for the Products, which were not as Defendants represented them to be.

94.     Under New York's common law principles of unjust enrichment, it is inequitable for Defendants to retain the benefits conferred by Plaintiff's and Class Members' overpayments.

95.     Plaintiff and Class Members seek disgorgement of all profits resulting from such overpayments and establishment of a constructive trust from which Plaintiff and Class Members may seek restitution.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues.

**WHEREFORE**, Plaintiff, on behalf of herself and the Class, pray for judgment as follows:

(a)    Declaring this action to be a proper class action and certifying Plaintiff as the representative of the Class under Rule 23 of the FRCP;

(b)    Entering preliminary and permanent injunctive relief against Defendants, directing Defendants to correct their practices and to comply with New York consumer protection laws;

(c)    Awarding monetary damages, including treble damages;

(d)    Awarding punitive damages;

(e)    Awarding Plaintiff and Class Members their costs and expenses incurred in this action, including reasonable allowance of fees for Plaintiff's attorneys and experts, and reimbursement of Plaintiff's expenses; and

(f)    Granting such other and further relief as the Court may deem just and proper.

Dated:  March 30, 2020

**THE SULTZER LAW GROUP P.C.**

Jason P. Sultzer /s/

By: _____

Jason P. Sultzer, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12601
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com

**PEARSON, SIMON & WARSHAW, LLP**
Melissa S. Weiner
mweiner@pswlaw.com
Joseph C. Bourne
jbourne@pswlaw.com
800 LaSalle Avenue, Suite 2150
Minneapolis, MN 55402
Telephone: (612) 389-0600
Facsimile: (612) 389-0610

*Counsel for Plaintiff and the Class*