UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
ALEXA GROSSMAN, *individually and
on behalf of others similarly
situated*,

          Plaintiff,          **MEMORANDUM & ORDER**
                                      20-CV-1603 (KAM)(ST)
    -against-

SIMPLY NOURISH PET FOOD COMPANY
LLC, PETSMART, INC.,

          Defendants.
----------------------------------X
KIYO A. MATSUMOTO, United States District Judge:

        Plaintiff Alexa Grossman, individually and on behalf
of others similarly situated, commenced this action against
Simply Nourish Pet Food Company LLC ("Simply Nourish") and
Petsmart, Inc. (collectively, "defendants"), alleging that
defendants falsely and deceptively represent that their pet food
products are made from "Natural Ingredients" or "Natural
Wholesome Ingredients," when in fact they contain synthetic
ingredients, in violation of New York General Business Law §§
349 and 350, state warranty laws, the Magnuson-Moss Warranty
Act, and common law. (ECF No. 1, Complaint ("Compl.") ¶¶ 2-4,
7.) Plaintiff seeks to represent a class of New York residents
who purchased Simply Nourish's pet products during the class
period, and requests declaratory and injunctive relief, monetary
damages, punitive damages, and attorney's fees. (Compl. ¶¶ 34-
38.)

Presently before the Court is defendants' motion to dismiss plaintiff's class action complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). (*See* ECF No. 12, Notice of Motion to Dismiss; ECF No. 12-1, Defendants' Memorandum of Law in Support of the Motion to Dismiss ("Def. Mem.").)  For the reasons set forth below, defendants' motion to dismiss is GRANTED in part and DENIED in part.

**BACKGROUND**

The following facts -- drawn from the complaint and documents that are incorporated by reference in, or integral to, the complaint -- are assumed to be true for purposes of this motion.  *See, e.g.*, *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

**I.   Factual Background**

This putative class action seeks to remedy defendants' alleged deceptive and misleading business practices with respect to the marketing and sales of Simply Nourish's pet foods and treats (the "Products").[1]

Defendant Simply Nourish Pet Food Company LLC ("Simply Nourish") is a corporation with its principal place of business in Phoenix, Arizona.  (Compl. ¶ 32.)  Simply Nourish manufactures, markets, advertises and distributes the Products

---

[1]    A list of the Simply Nourish pet food and treats is provided in the complaint.  (*See* Compl. ¶ 1.)

throughout the United States.  (*Id.*)  Defendant Petsmart, Inc.
is a corporation with its principal place of business in
Phoenix, Arizona.  (*Id.* ¶ 33.)  Plaintiff alleges that
defendants "created and/or authorized the false, misleading and
deceptive advertisements, packaging and labeling for the
Products."  (*Id.* ¶¶ 32-33.)

       Plaintiff is an individual consumer and resident of
the State of New York.  (Compl. ¶ 30.)  Plaintiff purchased two
Simply Nourish products: large breed dog foods and Simply
Nourish dog treats from PetSmart in Commack, Long Island during
the class period.  (*Id.*)  Plaintiff purchased the Products
because she believed they did not contain synthetic ingredients.
(*Id.*)  Plaintiff alleges that had she known that defendants'
representations she relied upon in purchasing the Products were
false, misleading, and deceptive, she would not have purchased
the Products.  (*Id.* ¶ 31.)  As a result of defendants' alleged
misrepresentations, the Products which plaintiff and the
putative class members received were worth less than the
Products for which they paid, and they were injured and lost
money as a result of defendants' conduct.  (*Id.* ¶¶ 25, 31.)

       Based on defendants' purported false and misleading
representations on the Products' packaging, plaintiff brought
this class action on behalf of herself and those similarly
situated alleging the following five causes of action: (1)

deceptive practices in violation of New York General Business Law § 349 ("GBL"); (2) false advertising in violation of GBL § 350; (3) breach of express warranty in violation of state warranty laws; (4) breach of written warranties in violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.* (the "MMWA"); and (5) unjust enrichment based on the financial benefits plaintiff conferred to defendants.  (Compl. ¶¶ 49-95.)

### A. Deceptive Product Labeling

Plaintiff alleges that defendants used a deceptive marketing and advertising campaign centered around claims that appeal to health-conscious consumers, *i.e.*, that its Products are made from "Natural Ingredients" or "Natural Wholesome Ingredients." (Compl. ¶¶ 2, 7.)  Defendants' "Natural" label was generally followed by the statement, "with Added Vitamins and Minerals."  (*Id.* ¶ 7.)  In the complaint, plaintiff provides several photos of the Products and identifies the alleged misrepresentations:



(*See* Compl. ¶ 7 (Simply Nourish Adult Dog Food Lamb & Oatmeal, which states, in the bottom right corner, "Natural Food for Dogs with Added Vitamins, Minerals & Trace Nutrients").)



(*See* Compl. ¶ 7 (Simply Nourish Limited Ingredient Diet Dog Food Venison & Sweet Potato, which states "Natural Wholesome Ingredients with Added Essential Vitamins & Minerals").)



(*See* Compl. ¶ 7 (Simply Nourish Grain Free Large Breed Adult Dog
Food Chicken with Peas & Potatoes, which states "Natural
Wholesome Ingredients with Added Essential Vitamins &
Minerals").)



(*See* Compl. ¶ 7 (Simply Nourish Grain Free Gluten Free Chewy Chicken Jerky Fillets Dog Treat, which states "Naturally Wholesome Ingredients").)

Plaintiff alleges that defendants' representations that its Products are "Natural" is false, misleading, and deceptive because the Products contain synthetic ingredients including: niacin, thiamine mononitrate, riboflavin, citric acid, tocopherol, calcium carbonate, folic acid, manganese sulfate, ascorbic acid, xantham gum, potassium chloride, tricalcium phosphate, dicalcium phosphate, zinc oxide, glycerin (vegetable). (Compl. ¶ 8.) According to plaintiffs, the above ingredients are synthetic as defined by the United States

Department of Agriculture ("USDA") and Congress. (*See id.* ¶¶ 10-11.)

### B. USDA's Decision Tree for Classification of Materials as Synthetic or Nonsynthetic

In support of the complaint's allegations, plaintiff attaches "Draft Guidance" from the USDA, highlighting the USDA's "Decision Tree for Classification of Materials as Synthetic of Nonsynthetic," under USA regulations for organic human foods. (*See* Compl. ¶ 10, Ex. A.) Following the decision tree, the USDA provides definitions for synthetic ingredients and classifies a number of substances as "synthetic" or "nonsynthetic" and provides an explanation justifying each classification. (*See* Ex. A, at 3-4.) The decision tree issued by the USDA does not appear to apply directly to pet foods. Plaintiff argues that the USDA decision tree provides some guidance as to what a reasonable consumer may deem "natural." (ECF No. 13, Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Mem."), at 8.)

### C. The Association of American Feed Control Officials' Guidelines for "Natural" Claims

In support of its motion to dismiss, defendants argue that its product labeling is not deceptive because its use of the term "Natural" is consistent with guidelines issued by the Association of American Feed Control Officials ("AAFCO"). (Def. Mem. at 3, 6; *see also* ECF No. 12-2, Declaration of Keri E.

Borders, Esq. ("Borders Decl."), Ex. B, AAFCO Guidelines for

"Natural" Claims, at 6-7.).  "Natural," according to AAFCO

includes feed ingredients "derived solely from plant, animal or

mined sources" that have been subjected to "physical processing,

heat processing, rendering, purification, extraction,

hydrolysis, enzymolysis or fermentation." *See Acquard v. Big

Heart Pet Brands*, 2020 U.S. Dist. LEXIS 224712, *8 (W.D.N.Y.

Nov. 30, 2020), *report and recommendation adopted*, *Acquard v.

Big Heart Pet Brands*, 2021 U.S. Dist. LEXIS 2393 (W.D.N.Y. Jan.

4, 2021).  In addition, under AAFCO guidelines, a pet food

product may be labeled as "natural," while containing chemically

synthesized vitamins, minerals, and other trace nutrients, so

long as the "natural" claim appears with qualifying disclaimer

language such as "Natural with added vitamins, minerals or other

trace nutrients." (Borders Decl., Ex. B, at 6-7.)  More

specifically:

> [T]he use of the term 'natural' is false and
> misleading if any chemically synthesized
> ingredients are present in the product;
> however, AAFCO recommends that exceptions be
> made in the cases when chemically synthesized
> vitamins, minerals, or other trace nutrients
> are present as ingredients in the product,
> provided that the product is not a dietary
> supplement and that a disclaimer is used to
> inform the consumer that the vitamins,
> minerals or other trace nutrients are not
> natural.

(Borders Decl., Ex. B, at 6-7.)  According to its website, AAFCO is a "private non-profit corporation" and "voluntary membership association of local, state, and federal agencies," charged with regulating the "sale and distribution of animal feeds and animal drug remedies."[2]  Defendants assert that AAFCO regulations are incorporated into New York law, but cite no statutory authority supporting such proposition.[3]

## II.  Procedural History

On March 30, 2020, plaintiff commenced the instant action seeking declaratory and injunctive relief, monetary damages, punitive damages, and attorney's fees.  (*See* ECF No. 1.)  On June 5, 2020, defendants filed a pre-motion letter

---

[2]    *See* "Welcome to AAFCO," Association of American Feed Control Officials (available at: https://www.aafco.org/) (last visited Jan. 25, 2021).  The Court may take judicial notice of statements made on the AAFCO website and the New York Department of Agriculture and Markets website, as discussed below.  *See Volpe v. Am. Language Commc'n Ctr., Inc.*, 15-cv-06854, 2016 WL 4131294, at *2 (S.D.N.Y. July 29, 2016) (court can take judicial notice of information publicly available on website where authenticity is not in dispute); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) (courts "routinely" take judicial notice of documents from official government websites).

[3]    Article 8 of the Agriculture and Markets Law Relating to the Manufacture and Distribution of Commercial Feed regulates the sale of pet food and treats and large animal feed in New York State.  According to the New York Department of Agriculture and Markets, "New York's commercial feed laws reference[] and permit[] those ingredients that are defined by the AAFCO."  *See* Pet Food, New York Department of Agriculture and Markets (available at: https://agriculture.ny.gov/food-safety/pet-food#:~:text=Registration%20Process) (last visited Jan. 25, 2021).  Nonetheless, the parties have not identified, and the Court has not located, any statutory authority indicating that New York has adopted the AAFCO guidelines pertaining to "natural" representations.  Furthermore, for the reasons explained below, defendants' purported compliance with the AAFCO standard is still insufficient to support dismissal of plaintiff's claims at this stage in the litigation.

requesting leave to file a motion to dismiss plaintiff's complaint for failure to state a claim upon which relief could be granted.  (ECF No. 8.)  Plaintiff opposed defendants' request for a pre-motion conference.  (ECF No. 10.)  On June 10, 2020, the Court set a briefing schedule for defendants' motion to dismiss on June 16, 2020.  (*See* June 10, 2020 and June 16, 2020 Docket Orders.)

Presently before the Court is defendants' motion to dismiss plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, and 12(b)(6) for failure to state a claim.  (*See* ECF No. 12.) Specifically, defendants move to dismiss plaintiffs' complaint on the grounds that (1) plaintiff fails to plausibly allege that she was, or that a reasonable consumer would be, deceived; (2) plaintiff lacks standing to pursue her claims; and (3) plaintiff fails to adequately plead her additional state-law claims. (Def. Mem. at 1-4.)

## LEGAL STANDARD

In evaluating defendants' motion to dismiss, the Court must accept all well-pleaded facts in the complaint as true and draw all reasonable inferences in plaintiff's favor.  *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam).  A claim survives a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient

"to state a claim to relief that is plausible on its face."
*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim
is facially plausible "when the plaintiff pleads factual content
that allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged."  *Ashcroft v.
Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at
556).  A plaintiff must show "more than a sheer possibility that
a defendant has acted unlawfully," *id.*, and cannot rely on mere
"labels and conclusions" to support a claim, *Twombly*, 550 U.S.
at 555.  If the plaintiff's pleadings "have not nudged [his or
her] claims across the line from conceivable to plausible, [the]
complaint must be dismissed."  *Id.* at 570.

District courts "must consider the complaint in its
entirety, as well as other sources courts ordinarily examine
when ruling on Rule 12(b)(6) motions to dismiss, in particular,
documents incorporated into the complaint by reference, and
matters of which a court may take judicial notice."  *Tellabs,
Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).
The court may also consider documents the plaintiff relied on in
bringing suit, and which are either in the plaintiff's
possession, or that the plaintiff knew of when bringing suit.
*Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002);
*Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir.
1993); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47–

48 (2d Cir. 1991), *cert. denied*, 503 U.S. 960 (1992); *McKevitt v. Mueller*, 689 F. Supp. 2d 661, 665 (S.D.N.Y. 2010).

## DISCUSSION

Plaintiff seeks relief for defendants' alleged deceptive and misleading business practices in violation of New York state law, federal law, and common law.  Defendants move to dismiss plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(1) and (6).  (*See* Def. Mem. at 10-11.)  For the reasons set forth below, the Court grants in part and denies in part defendants' motion to dismiss.

## I.  Standing

Defendants argue that plaintiff lacks standing to seek prospective injunctive relief because she cannot allege an imminent future harm and similarly lacks standing to bring a class action suit with respect to Products she did not purchase. (Def. Mem. at 4, 19.)  The Court will first consider defendants' motion to dismiss for lack of standing pursuant to Rule 12(b)(1) "[b]ecause standing is a jurisdictional matter."  *See Elkind v. Revlon Consumer Prods. Corp.*, No. 14-cv-2484(JS)(AKT), 2015 WL 2344134, at *3 (E.D.N.Y. May 14, 2015) (citing *Warth v. Seldin*, 422 U.S. 490, 498 (1975)); *see also Rhulen Agency, Inc. v. Alabama Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).

**A. Standing to Seek Injunctive Relief**

"To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015). "Plaintiffs seeking injunctive relief must also prove that the identified injury in fact presents a real and immediate threat of repeated injury." *Kreisler v. Second Ave. Diner Corp.*, 731 F.3d 184, 187 (2d Cir. 2013). "The prospective-orientation of the analysis is critical: to maintain an action for injunctive relief, a plaintiff cannot rely on past injury . . . but must show a likelihood that he . . . will be injured in the future." *Berni v. Barilla S.p.A.*, 964 F.3d 141, 147 (2d Cir. 2020). "Although past injuries may provide a basis to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016).

After reviewing the binding Second Circuit precedent, the Court concludes that plaintiff lacks standing to seek injunctive relief.[4] The Second Circuit has explained that "past

---

[4]    Plaintiff's reliance on out-of-Circuit precedent to support her request for injunctive relief is unpersuasive. This Court is bound to apply Second Circuit precedent. *See J & J Sports Prod., Inc. v. Leon*, No. 18-cv-2103

purchasers of a consumer product who claim to be deceived by that product's packaging . . . have, at most, alleged a past harm." *Berni*, 964 F.3d at 147.  Accordingly, "past purchasers of a product . . . are not likely to encounter future harm of the kind that makes injunctive relief appropriate." *Id.*  Here, plaintiff alleges that if the Products were actually "natural," as represented on the labels, she "would purchase the Products again in the immediate future." (Compl. ¶ 30.)  In other words, by her own admission, plaintiff would purchase defendants' Products only if defendants either changed the labeling or ingredients in the Products.  Thus, there is no risk that plaintiff would purchase defendants' Products with the current state of ingredients or labels because, by plaintiff's own allegations, these Products are purportedly deceptive.

Because plaintiff knows that the vitamins and minerals in the Simply Nourish Products are allegedly synthetic and that she will not purchase the Products in their current state, she cannot show an imminent risk of future deception and injury. Indeed, district courts in this Circuit have held that a plaintiff in a false advertisement case has necessarily become aware of the alleged misrepresentations, "there is no danger

---

(PKC) (RML), 2019 WL 1320277, at *6 (E.D.N.Y. Mar. 22, 2019) (noting that the district court is "not bound by the decisions of any other district court in the nation, nor by the decisions of any circuit court other than the Second." (internal quotations and citation omitted)).

that they will again be deceived by them." *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 465–66 (S.D.N.Y. 2020) (quoting *Elkind*, 2015 WL 2344134, at *3). Thus, any potential "future injury is merely conjectural or hypothetical" because even if plaintiff purchased the Products again, she would do so "with exactly the level of information" that she possessed from the outset of this suit, and accordingly would not be deceived or harmed. *Berni*, 2020 WL 3815523, at *6; *Silva v. Hornell Brewing Co.*, No. 20-cv-756 (ARR) (PL), 2020 WL 4586394, at *7 (E.D.N.Y. Aug. 10, 2020) ("To the extent that plaintiff was deceived by the appearance of the phrase 'All Natural' on the Product label, the existence of this lawsuit shows that he is now aware that the Product contains synthetic ingredients. Thus, he will not be harmed again in the same way, and he lacks standing to seek an injunction"); *Kennedy v. Mondelez Glob. LLC*, No. 19-cv-302 (ENV) (SJB), 2020 WL 4006197, at *5 (E.D.N.Y. July 10, 2020) (recommending dismissal of claim seeking injunctive relief for lack of standing due to plaintiff's conjectural future harm based on false advertising claims on Graham cracker labels). Because plaintiff failed to allege any imminent future harm, the Court concludes that plaintiff lacks standing to seek injunctive relief.[5]

---

[5]    Furthermore, the Court rejects plaintiff's attempt to distinguish *Berni* as applying only to Federal Rule of Civil Procedure 23(b)(2) because

17

The Court also rejects plaintiff's contention that an
"inability to rely on" the Products' labeling and advertising
constitutes an "imminent future injury" justifying injunctive
relief.  (Pl. Mem. at 21-23.)  Even crediting plaintiff's
argument that her injury is a future confusion regarding the

---

the Second Circuit's analysis broadly addressed the district court's
authority to provide injunctive relief in equity and relied on constitutional
requirements for standing that all plaintiffs must satisfy.  *See Berni*, 964
F.3d at 146-47 ("Our analysis starts with the familiar principle that
injunctive relief is only proper when a plaintiff, lacking an adequate remedy
at law, is likely to suffer from injury at the hands of the defendant if the
court does not act in equity . . . . If the injury occurred in the past -- or
if some future injury is merely conjectural or hypothetical -- then
plaintiffs will lack the kind of injury necessary to sustain a case or
controversy, and necessary to establish standing, under Article III.").  The
Second Circuit also warned that "[w]here there is no likelihood of future
harm, there is no standing to seek an injunction, and so no possibility of
being certified as a Rule 23(b)(2) class." *Id.* at 149.  Thus, plaintiff's
attempt to minimize the scope of the Second Circuit's holding and reasoning
is unpersuasive and district courts in this Circuit have relied on *Berni* in
assessing challenges to standing to seek injunctive relief under Federal Rule
of Civil Procedure 12.  *See Rivera v. Navient Sols., LLC*, No. 20-cv-1284
(LJL), 2020 WL 4895698, at *14 (S.D.N.Y. Aug. 19, 2020); *Kennedy*, 2020 WL
4006197, at *5.

    Indeed, even before *Berni*, district courts in this Circuit would
dismiss requests for injunctive relief where, as here, the future harm
alleged was speculative. *See, e.g.*, *Holve v. McCormick & Co., Inc.*, 334 F.
Supp. 3d 535, 552 (W.D.N.Y. 2018) (concluding that plaintiff failed to
demonstrate real or immediate injury and denying standing for injunctive
relief where, by plaintiff's own admission, she would purchase products in
the future only if the Product "was not misbranded"); *Gonzalez v. Costco
Wholesale Corp.*, No. 16-cv-2590, 2018 WL 4783962, at *6 (E.D.N.Y. Sept. 29,
2018) (plaintiff lacked standing to seek injunctive relief because her claim
that she would resume purchasing the offending products in the future if the
misleading conduct was remedied was insufficient to establish likelihood of
future injury); *Atik v. Welch Foods, Inc.*, No. 15-cv-5405 (MKB) (VMS), 2016
WL 5678474, at *6 (E.D.N.Y. Sept. 30, 2016) ("Plaintiffs also allege that
they would resume purchasing the Products in the future but only if the
representations on the Products' labels were 'truthful and non-deceptive.'
These allegations are insufficient to establish a likelihood of future injury
because Plaintiffs cannot rely on past injury." (internal citation omitted));
*Tomasino v. Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 256 (E.D.N.Y. 2014)
(holding that the plaintiffs did not have standing to seek injunctive relief
because the plaintiffs alleged that the products at issue had been
deceptively advertised and that they would not have bought the products
"absent the allegedly misleading advertisements").

Products' labels, this allegation is not pled in her complaint
and therefore is an inadequate basis for standing.  Moreover,
such allegation regarding plaintiff's inability to "rely on"
defendants' label has similarly been rejected by district courts
in this Circuit as insufficient to establish future injury for
standing.  *See Barreto v. Westbrae Nat., Inc.*, No. 19-cv-9677
(PKC), 2021 WL 76331, at *9 (S.D.N.Y. Jan. 7, 2021) (collecting
cases and rejecting plaintiff's argument that she would purchase
that product if she "could trust the label"); *Ashour v. Arizona
Beverages USA LLC*, No. 19-cv-7081 (AT), 2020 WL 5603382, at *4
(S.D.N.Y. Sept. 18, 2020) (denying standing for injunctive
relief where plaintiff alleged that he would purchase the
products if he "could rely upon the truthfulness of Defendants'
labeling").  For these reasons, the Court finds that plaintiff
failed to demonstrate any imminent future injury and thus lacks
standing to seek injunctive relief.

### B. Standing as to Unpurchased Products

Defendants further argue that plaintiff lacks standing
to bring a class action with respect to the Products she did not
purchase. (Def. Mem. at 19.)  Specifically, defendants contend
that plaintiff's complaint "challenges 99 varieties of Simply
Nourish products" but does not indicate which Product plaintiff
purchased. (*Id.*)  In response, plaintiff contends that she has
standing to challenge any unpurchased Products because the

"natural" labeling of such unpurchased Products are substantially similar to that of the Products she did purchase. (Pl. Mem. at 15; *see also* Compl. ¶ 68 ("Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large. Moreover, all consumers purchasing the Products were and continue to be exposed to Defendants' material misrepresentations.")

A plaintiff in a putative class action has class standing if "he plausibly alleges (1) that he personally has suffered some actual ... injury as a result of the putatively illegal conduct of the defendant ... and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants[.]" *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145, 162 (2d Cir. 2012) (internal citations and quotations omitted). District courts in this Circuit are divided over whether class standing should be resolved at the pleading stage or the class certification stage. *See Buonasera v. Honest Co.*, 208 F. Supp. 3d 555, 562-63 (S.D.N.Y. 2016) (collecting cases that have and have not resolved class standing at the motion to dismiss stage). Several courts "have held that, subject to further inquiry at the class certification stage, a named plaintiff has standing to bring class action claims under state consumer protection laws

for products that he did not purchase, so long as those products, and the false or deceptive manner in which they were marketed, are 'sufficiently similar' to the products that the named plaintiff did purchase." *Daniel v. Tootsie Roll Indus., LLC*, 2018 WL 3650015, at *5 (S.D.N.Y. Aug. 1, 2018) (quoting *Mosley v. Vitalize Labs, LLC*, 2015 WL 5022635, at *7 (E.D.N.Y. Aug. 24, 2015) (citations omitted)).

       Here, to the extent class standing must be addressed at this stage, the Products (both purchased and unpurchased) are sufficiently similar to support plaintiff's class standing at this time.  Specifically, the "nature and content of the specific misrepresentation alleged," *NECA–IBEW Health & Welfare Fund*, 693 F.3d at 162, is similar because the Products were all sold and marketed by defendants and possessed the same allegedly deceptive representation that the underlying ingredients were "natural."  (*See* Compl. ¶ 68 ("Defendants' material misrepresentations were substantially uniform in content, presentation, and impact upon consumers at large."); *see, e.g.*, *Suarez v. California Nat. Living, Inc.*, No. 17-cv-9847 (VB), 2019 WL 1046662, at *5 (S.D.N.Y. Mar. 5, 2019) (finding plaintiff had class standing to challenge unpurchased products where the products were "sold and marketed by defendant," "labeled and marketed as 'natural' (or, in one instance, "naturally perfect for the whole family," and "plaintiff alleges

each product contains one or more synthetic ingredients"); *Buonasera*, 208 F. Supp. 3d at 559, 563 (finding plaintiff had class standing as to thirty-nine unpurchased cosmetics products allegedly mislabeled as " 'natural,' 'all natural,' 'naturally derived,' 'plant-based,' and/or containing 'no harsh chemicals ever!,' " even where "the unpurchased products may contain different ingredients compared to the purchased products").

Thus, defendant's motion to dismiss for lack of standing for unpurchased Products is denied without prejudice, and "any specific concerns regarding the [Products'] differences can be addressed at the class certification stage." *Wai Chu v. Samsung Elecs. Am., Inc.*, No. 18-cv-11742 (GHW), 2020 WL 1330662, at *3 (S.D.N.Y. Mar. 23, 2020) (quotation marks omitted); *see also Segedie v. Hain Celestial Group, Inc.*, No. 14-cv-5029 (NSR), 2015 WL 2168374, at *11 (S.D.N.Y. May 7, 2015) (declining to address class standing at the motion to dismiss stage and noting that the Court would address the issue at a later time); *Moses v. Apple Hospitality REIT Inc.*, 14-cv-3131 (DLI)(SMG), 2016 WL 8711089, at *4 (E.D.N.Y. Sept. 30, 2016) (holding that "[s]ince Plaintiff has Article III standing, the more prudent approach is to analyze class standing at the class certification stage because the Plaintiff has already

established a case or controversy between the parties").[6]
Accordingly, the Court denies without prejudice defendants'
motion to dismiss for lack of class standing plaintiff's claims
arising from unpurchased Products.  Defendants may renew this
argument at the class certification stage.

## II.   New York GBL §§ 349 and 350

Plaintiff's first and second cause of action assert
that defendants' conduct violated New York law because the
representations were deceptive acts and practices in violation
of GBL § 349 and false and misleading advertising in violation
of GBL § 350.  (Compl. ¶¶ 51, 53, 60-63.)  In relevant part,
plaintiff alleges that:

> Defendants' improper consumer-oriented
> conduct -- including labeling and advertising
> the Products as being "Natural" -- is
> misleading in a material way in that it, *inter
> alia*, induced Plaintiff and the New York
> Subclass Members to purchase and pay a premium
> for Defendants' Products and to use the
> Products when they otherwise would not have.
> Defendants made their untrue and/or misleading
> statements and representations willfully,
> wantonly, and with reckless disregard for the
> truth.

---

[6]    Defendants' reliance on *DiMuro v. Clinique Labs., LLC*, 572 Fed. App'x
27 (2d Cir. 2014) (summary order) in unavailing because there, the Second
Circuit denied standing for unpurchased products after holding that "each of
the seven different products have different ingredients, and Clinique made
different advertising claims for each product.  Entirely unique evidence
will, therefore, be required to prove that the 35-some advertising statements
for each of the seven different Repairwear products are false and
misleading." *Id.* at 29.  Thus, *DiMuro* is distinguishable because, for the
reasons noted above, the Products here contain substantially similar
"advertising claims" and raise "nearly identical" concerns regarding the
validity of defendants' "natural" representation.  *DiMuro*, 572 Fed. App'x at
29 (quoting *NECA-IBEW Health & Welfare Fund*, 693 F.3d at 163).

(Compl. ¶ 54.)  Plaintiffs allege that she and the New York subclass members were "injured inasmuch as they relied upon the labeling, packaging and advertising and paid a premium for the Products which were -- contrary to Defendants' representations -- not 'Natural.'"  (Compl. ¶ 54.)  In response, defendants argue that plaintiffs failed to plausibly allege that the Simply Nourish label is deceptive because: (i) the label on the Products is "AAFCO-compliant" and "specifically qualified and within the context of nutritionally complete pet food;" (ii) the label does not "represent[] that the 'added vitamins and minerals' are 'natural,'" (iii) "the challenged ingredients are not compatible with a qualified natural claim," and (iv) "in any event, the ingredient list on all of the products specifically identifies the 'added vitamins and minerals' ingredients that are the subject of the qualification."  (Def. Mem. at 11-12.)

Section 349 of the GBL provides a cause of action for any person injured by "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing or any service."  N.Y. Gen. Bus. Law § 349(a), (h).  "Deceptive acts" are acts that are "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013).  "To make out a prima facie case under Section 349, a plaintiff must demonstrate that

(1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000).

Section 350 of the GBL prohibits "[f]alse advertising in the conduct of any business, trade or commerce," and is analyzed under the same "reasonable consumer" standard as Section 349. *Id.* at 521. To establish a claim under GBL § 350, which prohibits false advertising, "a plaintiff must demonstrate that the advertisement (1) had an impact on consumers at large, (2) was deceptive or misleading in a material way, and (3) resulted in injury." *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) (quoting *Andre Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (2d Dep't 2002)) (alteration omitted).

Whether a representation is likely to deceive a reasonable consumer is usually a question of fact that should not be resolved on a motion to dismiss. *Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 478 (S.D.N.Y. 2014). Given that the reasonable consumer inquiry is, in most instances, a factual one, a party seeking to dismiss a false labeling claim must "extinguish . . . the possibility" that a reasonable consumer could be misled into believing the Products contained no synthetic materials. *In re Frito-Lay N. Am., Inc.*

*All Nat. Litig.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *16 (E.D.N.Y. Aug. 29, 2013) (declining to dismiss plaintiffs' claims that the statement "made with all natural ingredients" on the product labels would mislead a reasonable consumer). Nonetheless, under both GBL §§ 349 and 350, "[i]t is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink*, 714 F.3d at 741.

Having reviewed the complaint and supporting documents, the Court concludes that plaintiff plausibly alleged that a reasonable consumer may be deceived by the statements regarding "Natural" ingredients provided on defendants' Products' labels. Thus, for the reasons set forth below, the Court denies defendants' motion to dismiss with respect to plaintiff's claims under GBL §§ 349 and 350 relating to the alleged deceptive and false advertising.

As an initial matter, the Court notes that its conclusion today is consistent with recent district court decisions in this Circuit and outside of this Circuit addressing similar claims challenging "Natural" advertising representations on pet food products. *See Scandore v. Nylabone Corp.*, No. 20-cv-0254 (GRB)(ARL), at 38-39 (E.D.N.Y. 2020) (denying motion to dismiss after concluding that plaintiff plausibly alleged a claim under GBL §§ 349 and 350 and stating that discovery was

needed to determine whether a "reasonable consumer" would likely
be deceived by defendants' labeling); *Acquard v. Big Heart Pet
Brands*, No. 19-cv-50 (JLS), 2020 U.S. Dist. LEXIS 224712
(W.D.N.Y. Nov. 30, 2020) (denying motion to dismiss after
finding that plaintiffs sufficiently pleaded their claims under
GBL §§ 349 and 350 and noting that, at a minimum, the case
presented a "question of whether the language 'with added
vitamins, minerals & nutrients' would cure the otherwise
misleading statement that the Product was 'All Natural'"),
*report and recommendation adopted*, *Acquard v. Big Heart Pet
Brands*, 2021 U.S. Dist. LEXIS 2393 (W.D.N.Y. Jan. 4, 2021);
*Roper v. Big Heart Pet Brands, Inc.*, No. 19-cv-406 (DAD)(BAM),
2020 WL 7769819, at *5 (E.D. Cal. Dec. 30, 2020) (denying motion
to dismiss after finding that "plaintiff's claim that a
reasonable consumer would find the label 'natural' to be
misleading, even with the qualifying language 'with added
vitamins, minerals & nutrients,' to be plausible").[7]  Consistent
with these district court decisions, this Court denies
defendants' motion to dismiss and concludes that plaintiff

---

[7]     In *Scandore v. Nylabone Corp.*, No. 20-cv-0254 (GRB)(ARL) (E.D.N.Y.
2020), the district court denied defendants' motion to dismiss in part, on
the record at a pre-motion conference.  Defendants provided the court a true
and accurate copy of the transcript from the July 7, 2020 hearing. (*See* ECF
No. 13-2, Transcript from July 7, 2020 Hearing before Judge Gary Brown,
Exhibit A.)  Accordingly, citations to *Scandore* in this Memorandum & Order
will refer to the pagination provided in the transcript attached as Exhibit
A.

plausibly alleged a claim under GBL §§ 349 and 350 for the reasons set forth below.

First, the Court concludes that plaintiff plausibly alleged a claim under GBL §§ 349 and 350.  Viewing the complaint in context and in the light most favorable to the plaintiff, a reasonable consumer could plausibly construe the Products' labeling to suggest that the "added vitamins and minerals," like the rest of the "natural ingredients," are also "natural."  (*See* Compl. ¶ 7 at 10 ("Natural Wholesome Ingredients with Added Essential Vitamins & Minerals"); at 11 (same); at 12 (same); at 13 ("Natural Ingredients with Added Vitamins, Minerals & Trace Nutrients").)  In other words, plaintiff plausibly alleged that a reasonable consumer viewing the Products' label may interpret the "natural" claim to mean that the Products do not contain synthetic ingredients and that all of the Products' ingredients -- including the "added vitamins and minerals" -- are natural. It is not unreasonable as a matter of law for a consumer to expect that a product labeled "natural" to contain only natural, and not synthetic ingredients.  *See, e.g., Petrosino v. Stearn's Prod., Inc.*, No. 16-cv-7735 (NSR), 2018 WL 1614349, at *7 (S.D.N.Y. Mar. 30, 2018) ("[A] reasonable consumer acting reasonably very well could be misled because they could conclude that the 'natural' label on the cosmetics means that they are made with all natural products"); *Langan v. Johnson & Johnson*

*Consumer Cos., Inc.*, 95 F. Supp. 3d 284, 289 (D. Conn. 2015) ("[I]t seems perfectly reasonable . . . that a typical consumer might interpret the phrase '100% naturally-sourced sunscreen ingredients' on a sunscreen product label to mean that the whole product was natural"); *Wilson v. Frito-Lay N. Am., Inc.,* No. 12-1586, 2013 WL 1320468, at *13 (N.D. Cal. Apr. 1, 2013) ("[A] reasonable consumer could interpret a bag of chips claiming to have been 'Made with ALL NATURAL Ingredients' to consist exclusively of natural ingredients, contrary to the reality described in the nutrition box.").

Second, this Court declines to adopt the AAFCO guidelines discussing "natural" claims in this instant case, and thus, the defendants' contention that its Products are "AAFCO-compliant" bears no dispositive weight in deciding this motion. (Def. Mem. at 12-14.)  Several district courts have declined to adopt the AAFCO's guidelines on "natural" representations, and this Court similarly finds no authority requiring it to follow these standards.  *See Roper*, 2020 WL 7769819, at *5 ("AAFCO's guidelines are not an enforceable provision of California law"); *Blue Buffalo Co. v. Nestle Purina Petcare Co.*, No. 15-cv-384 (RWS), 2015 WL 3645262, at *5 (E.D. Mo. June 10, 2015) ("[T]here is no legal authority for the proposition that no reasonable consumer could be misled by labeling that complies with FDA and

AAFCO regulations.").[8]  Moreover, at this stage in the
litigation, the Court need not determine whether defendants'
products are "natural" "within any given definition" because GBL
§§ 349 and 350 employ "an objective standard under which a fact
finder must find if the 'natural' label, is misleading to a
reasonable consumer acting reasonably." *Petrosino*, 2018 WL
1614349, at *7; *see also Ault v. J.M. Smucker Co.*, No. 13-cv-
3409 (PAC), 2014 WL 1998235, at *5 (S.D.N.Y. May 15, 2014)
("While the Court would welcome the FDA's guidance on the
definition of 'natural,' this case is far less about science
than it is about whether a label is misleading.  The issue is
whether the use of the phrase 'All Natural' was likely to
mislead a reasonable consumer acting reasonably under the
circumstances." (internal quotationn marks, citations, and
alterations omitted)).  Thus, discovery is needed to determine
whether a reasonable consumer would be deceived and this Court
cannot conclude, as a matter of law, that plaintiff failed to
state a claim under GBL §§ 349 and 350.[9]  *Scandore*, No. 20-cv-
0254, at 39.

---

[8]     To be clear, the Court is not holding, as a rule of law, that pet foods
labeled "natural" may not contain synthetic ingredients.  Instead, the Court
concludes only that "[t]he alleged presence of synthetic ingredients merely
brings the claim of deception into the realm of plausibility." *Segedie v.
Hain Celestial Grp.*, Inc., No. 14-cv-5029 (NSR), 2015 WL 2168374, at *12
(S.D.N.Y. May 7, 2015).

[9]     Even assuming the AAFCO guidelines applied, however, the Court would
still deny defendants' motion to dismiss because it is unclear from the
guidelines whether the Products' labels are compliant.  For instance, the

Third, defendants' contention that the "qualified statement" on the Products' label prevents any consumer misconception is also unpersuasive.  Notably, one Simply Nourish Product identified by plaintiff, "Simply Nourish Grain Free Gluten Free Chewy Chicken Jerky Fillets Dog Treat," does not contain the qualified statement and instead simply represents that the Product is made of "Naturally Wholesome Ingredients." (*See* Compl. ¶ 7 at 14); *see also Scandore*, No. 20-cv-0254, at 38 (noting that some of defendants' products did not include the disclaimer language referring to "added vitamins and minerals"). Accepting plaintiff's allegations that the ingredients contained in the Products are synthetic and non-natural (*see* Compl. ¶ 8),

_____

AAFCO guidelines recommend that "exceptions be made" in cases when synthetic ingredients are present in the product, provided "that a disclaimer is used to inform the consumer that the vitamins, minerals or other trace nutrients are not natural." (Borders Decl., Ex. B, at 6-7.)  Applying this standard, for the Products to be "AAFCO-compliant" as represented by defendants, the disclaimer "with added vitamins and minerals" would necessarily have "to inform the consumer that the vitamins, minerals or other trace nutrients are not natural." (Borders Decl., Ex. B, at 6-7.)  Here, defendants argue that the Products' "natural claim is not deceptive because it is expressly *qualified* (i.e., a statement that the food is natural *and* contains added vitamins and minerals)." (Def. Mem. at 2, 12-13 (emphasis in original).) Viewing this "qualified statement" in context, the Court concludes that defendants' disclaimer is inadequate because it does not indicate to consumers that the vitamins and nutrients added to the Products are "not natural," as required under AAFCO guidelines.  Instead, as explained above, a reasonable consumer may read the "natural" claim as applying to both the ingredients and the added vitamins and minerals.  Although the AAFCO guidelines do provide an example disclaimer, there appears to be a contradiction in the AAFCO guidelines, which require a disclaimer but provide an example disclaimer without language indicating that the ingredients are "not natural."  Accordingly, even if the AAFCO guidelines were controlling here, the Court would still deny defendants' motion to dismiss because it is unclear whether the Products' labels are compliant.  In any event, as explained above, the AAFCO guidelines are not determinative of the issues here.

the Court concludes that the presence of an ingredient list
provides no basis for dismissal of plaintiff's claims.

Fourth, although some courts have found that an
ingredient statement may clarify a consumer's understanding of
what is being advertised, the mere presence of an ingredient
list on a product "does not eliminate the possibility that
reasonable consumers may be misled." *Ackerman v. Coca-Cola Co.*,
No. 09-cv-0395 (JG), 2010 WL 2925955, at *16-17 (E.D.N.Y. July
21, 2010).  Thus, although the ingredient list provided on the
Products is relevant to whether a reasonable consumer would be
misled by the labels, the effect that such list may have on a
reasonable consumer's understanding of the Products' label is a
factual inquiry.  *See Sitt v. Nature's Bounty, Inc.*, No. 15-cv-
4199 (MKB) (E.D.N.Y. Sept. 26, 2016); *Goldemberg*, 8 F. Supp. 3d
at 478 (rejecting motion and holding that a reasonable consumer
could interpret "Active Naturals" to mean the product was
completely natural).  Furthermore, although defendants argue
that the allegedly synthetic ingredients are properly
characterized as natural (*see* Def. Mem. at 8-9, 11-12), "that
question of fact is improperly resolved on a motion to dismiss,
when the Court must accept plaintiff's well-pleaded allegations
as true and draw all reasonable inferences in plaintiff's
favor." *Suarez*, 2019 WL 1046662, at *8; *In re Frito-Lay N. Am.,
Inc. All Nat. Litig.*, 2013 WL 4647512, at *16 (noting that while

32

an ingredient list is relevant, it does not, as a matter of law, "extinguish the possibility that reasonable consumers could be misled by [defendant's] labeling and marketing"). Accordingly, although a jury may ultimately find that the appearance of ingredients that are obviously synthetic on an ingredient list undercuts plaintiff's theory of deception, this Court cannot make this determination as a matter of law at this stage.

Finally, plaintiff sufficiently alleged causation and injury at this stage in the litigation to survive dismissal. As noted above, the complaint alleges facts that, if true, establish that the "natural" representations were plausibly misleading to a reasonable consumer, misled plaintiff, and caused plaintiff harm in the form of economic injury. (*See* Compl. ¶ 54 ("Defendants' improper consumer-oriented conduct -- including labeling and advertising the Products as being "Natural" -- is misleading in a material way in that it, *inter alia*, induced Plaintiff and the New York Subclass Members to purchase and pay a premium for Defendants' Products and to use the Products when they otherwise would not have")); *see Ackerman*, 2010 WL 2925955, at *23 ("Injury is adequately alleged under GBL §§ 349 or 350 by a claim that a plaintiff paid a premium for a product based on defendants' inaccurate representations." (citations omitted)); *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 68 (E.D.N.Y. 2017) (finding a

sufficiently pled section 349 and 350 injury where plaintiff alleged that she would not have paid the price charged if not for the purported allergy benefits in the Infant Formula); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288–89 (S.D.N.Y. 2014) (finding a sufficiently pled section 349 injury where the plaintiff alleged that he would not have paid the price charged for "fat-free" milk had he known it contained fat).  For the foregoing reasons, the Court denies defendants' motion to dismiss plaintiffs' claims for deceptive practices and false advertising under GBL §§ 349 and 350.

## III.  Breach of Express Warranty

Plaintiff's third cause of action asserts that defendants breached an express warranty under state warranty laws by providing a "written affirmation of fact" promising that the Products are "Natural."  (Compl. ¶¶ 70-78.)

To properly plead breach of an express warranty under New York law, plaintiff must allege "an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase...." *Sitt*, 2016 WL 5372794, at *15 (quoting *Factory Assocs. & Exporters, Inc. v. Lehigh Safety Shoes Co. LLC*, 382 Fed. App'x 110, 111–12 (2d Cir. 2010) (summary order)).  "Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty

that the goods shall conform to the affirmation or promise."
N.Y. U.C.C. § 2-313(1)(a).  Further, "[a]ny description of the
goods which is made part of the basis of the bargain creates an
express warranty that the goods shall conform to the
description."  *Id.* § 2-313(1)(b).

To recover on a breach of warranty claim under New
York law, the buyer of the allegedly mislabeled product "must
within a reasonable time after [s]he discovers or should have
discovered any breach notify the seller of breach or be barred
from any remedy."  N.Y. U.C.C. § 2-607(3)(a).  To satisfy the
pre-suit notice requirement "the notice given by plaintiff had
only to 'alert [defendant] that the transaction [was]
troublesome and [did] not need to include a claim for damages or
threat of future litigation.'"  *Cliffstar Corp. v. Elmar
Industries, Inc.*, 678 N.Y.S.2d 222, 223 (4th Dep't 1998) (citing
*Computer Strategies v. Commodore Bus. Machs.*, 483 N.Y.S.2d 716,
723 (2d Dep't 1984)).  "[R]equiring notice is designed to defeat
commercial bad faith, not to deprive a good faith consumer of
his remedy."  N.Y. U.C.C. § 2-607 cmt. 4.  "[T]he sufficiency
and timeliness of the notice is generally a question for the
jury."  *Sullivan v. Aventis, Inc.*, No. 14-cv-2939 (NSR), 2015 WL
4879112, at *8 (S.D.N.Y. Aug. 13, 2015) (citing *Tomasino v.
Estee Lauder Cos. Inc.*, 44 F. Supp. 3d 251, 260 (E.D.N.Y.
2014)).

Plaintiff alleges that defendants promised that the Products were "natural," yet the Products contained synthetic ingredients. (Compl. ¶¶ 71-76, 85-88.) Defendants argue that a "natural" label "in the context of a qualified claim" is not an express warranty because the term "natural" is not an "affirmation of fact or written promise" that the Products do not contain synthetic ingredients. (Def. Mem. at 19-20.) Further, defendants assert that plaintiff failed to provide pre-suit notice with respect to the alleged breach of express warranty as required under New York law. (*Id.* at 20.)

Here, the Court concludes that plaintiff adequately stated a claim that the "natural" label on the Products warranted, through its description of the Products, a statement of fact about the Products that was allegedly breached by the inclusion of synthetic ingredients. *See In re Frito-Lay N. Am.*, 2013 WL 4647512, at *27; *Acquard*, 2020 U.S. Dist. LEXIS 224712, *14 (declining to dismiss plaintiff's express warranty claim challenging an "All Natural" label on pet food products); *Goldemberg*, 8 F. Supp. 3d at 483 (declining to dismiss plaintiff's express warranty claim challenging the "Active Naturals" labeling on Aveeno skin care products). The Court also finds that plaintiff sufficiently alleged that she relied on the "natural" claim, which was the basis for the bargain, and

was damaged due to the price paid for the Products.  (Compl. ¶¶
73-74, 78.)

        Nonetheless, the Court concludes that plaintiff failed
to allege pre-suit notice as required for a breach of express
warranty claim.  Plaintiff's complaint states that "[w]ithin a
reasonable time after they knew or should have known of
Defendants' breach, Plaintiff, on behalf of herself and Class
Members, placed Defendants on notice of their breach, giving
Defendants an opportunity to cure their breach, which they
refused to do."  (Compl. ¶ 75.)  This allegation, by itself, is
insufficient to plead pre-suit notice.  Instead, plaintiff must
provide factual allegations -- such as the date and method
plaintiff sent a pre-suit notice -- supporting the contention
that she notified defendant of the alleged breach within a
reasonable time.  *See Suarez*, 2019 WL 1046662, at *9 (noting
that the amended complaint specifically alleged that plaintiff
mailed a "pre-suit notice" on a specific date, asserting that
defendant breached an express warranty under New York law).
Although plaintiff states in her opposition to defendants'
motion to dismiss that "Plaintiff mailed Defendants a pre-suit
notice letter on September 5, 2018, prior to filing the original
complaint in this case," such allegation is absent from the
complaint.  (Pl. Mem. at 18.)  Consequently, because plaintiff
failed to allege any facts supporting the allegation that she

notified defendant of the alleged breach within a reasonable time after its discovery, defendants' motion to dismiss is granted, without prejudice.  Plaintiff is granted leave to amend in order to correct this deficiency.  *See, e.g.*, *Petrosino*, 2018 WL 1614349, at *5 (dismissing express warranty claim for lack of pre-suit notice but permitting plaintiff to amend complaint).

## IV.   The Magnuson-Moss Warranty Act

Plaintiff's fourth cause of action asserts that defendants violated the MMWA by providing a "written warranty" promising that the Products are "Natural."  (Compl. ¶¶ 79-88.) Defendants argue that a "natural" label "in the context of a qualified claim" is not a written warranty that the Products "will meet a specified level of performance over a specified period of time."  (Def. Mem. at 21.)

"The [Magnuson-Moss Warranty Act] grants relief to a consumer 'who is damaged by the failure of a ... warrantor ... to comply with any obligation ... under a written warranty.' " *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)).  The statute defines a "written warranty" as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will

> meet a specified level of performance over a
> specified period of time[.]

15 U.S.C. § 2301(6)(A).  The MMWA "makes a warrantor directly
liable to a consumer for breach of a written warranty." *Diaz v.
Paragon Motors of Woodside, Inc.*, 424 F. Supp. 2d 519, 540
(E.D.N.Y. 2006).  The MMWA "merely incorporates and federalizes
state-law breach of warranty claims, including state-law
standards for liability and damages." *Sitt*, 2016 WL 5372794, at
*17.

> The Court concludes that plaintiff failed to allege a
violation of a written warranty as defined under the MMWA
because the "natural" representation on defendants' Products
relates to the nature of the material in the product, but does
not "affirm[] or promise[] that such material or workmanship is
defect free or will meet a specified level of performance over a
specified period of time." 15 U.S.C. § 2301(6)(A).  Although
some district courts in this Circuit have declined to dismiss
MMWA claims under the reasoning that "express warranty and MMWA
claims stand or fall together," *see Scandore*, No. 20-cv-0254, at
36 (noting that the law surrounding the MMWA is "very unclear"
and declining to dismiss MMWA claim where express warranty claim
survived); *Suarez*, 2019 WL 1046662, at *9 (declining to dismiss
MMWA claim where plaintiff's underlying warranty claims survive
dismissal); *Sitt*, 2016 WL 5372794, at *18 (same), the Court

concludes that the "natural" representation on defendants' Products cannot satisfy the statutory definition of a written warranty under the MMWA.  In reaching this conclusion, the Court agrees with other district courts in this Circuit in finding that the "natural" label constitutes a product description and does not warrant any specified level of performance or promise that the product to which the label is affixed will be defect free.  *See Newton v. Kraft Heinz Foods Co.*, No. 16-cv-04578 (RJD)(RLM), 2018 WL 11235517, at *6 (E.D.N.Y. Dec. 18, 2018) ("[L]ooking solely at the language of the MMWA, Plaintiff's suggestion that Defendants' "natural" or "all natural" labels could be construed to "promise" or "affirm" a "defect free" sour cream or a sour cream that "will meet a specified level of performance over a specified period of time" strains virtually any possible interpretation or definition of the term "natural."); *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, 2013 WL 4647512, at *17 ("An 'All Natural' label does not warrant a product free from defect . . . Nor does it constitute a promise that the product 'will meet a specified level of performance over a specified period of time.'").  For these reasons, the Court dismisses plaintiff's MMWA claim.

**V.  Unjust Enrichment**

Finally, plaintiff's fifth cause of action alleges that defendants' "unlawful conduct as described in this

40

Complaint allowed Defendants to knowingly realize substantial revenues from selling their Products at the expense of, and to the detriment or impoverishment of, Plaintiff and Class Members, and to Defendants' benefit and enrichment." (Compl. ¶ 92.) Defendants argue that plaintiff's unjust enrichment claim is duplicative of their other claims, and should therefore be dismissed. (Def. Mem. at 22-23.)

"Under New York law, a plaintiff may prevail on a claim for unjust enrichment by demonstrating '(1) that the defendant benefitted; (2) at the plaintiff's expense; and (3) that equity and good conscience require restitution.'" *Nordwind v. Rowland*, 584 F.3d 420, 434 (2d Cir. 2009) (quoting *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 586 (2d Cir. 2006)). Unjust enrichment is an equitable remedy, available "only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012). Notably, "[u]njust enrichment claims should be dismissed 'where the violative conduct alleged is conterminous with a conventional tort or contract claim, regardless of whether the tort or contract claim is dismissed.'" *Hughes v. Ester C Co.*, 330 F. Supp. 3d 862, 877 (E.D.N.Y. 2018) (quoting *Obeid on behalf of*

*Gemini Real Estate Advisors LLC v. La Mack*, No. 14-cv-6498 (LTS)
(HBP), 2018 WL 2059653, at *29 (S.D.N.Y. May 1, 2018)); *see also*
*Bowring v. Sapporo U.S.A., Inc.*, 234 F. Supp. 3d 386, 392
(E.D.N.Y. 2017) (dismissing unjust enrichment claim because it
was duplicative of plaintiff's other dismissed claims).

　　　　Here, the unjust enrichment claim duplicates the
plaintiff's other claims, which arise out identical facts: the
defendants' alleged misrepresentation on the Product packaging.
Because plaintiff's unjust enrichment claim under New York law
is based on the same allegations as her claims of violations of
GBL §§ 349 and 350 and breach of express warranty under New York
law, and because plaintiff has not shown how her unjust
enrichment claim differs from her other New York claims, the
Court dismisses plaintiff's unjust enrichment claim as
duplicative of her other New York claims. *See, e.g.*, *Silva*,
2020 WL 4586394, at *7 (dismissing unjust enrichment claim as
duplicative); *Scandore*, No. 20-cv-0254, at 35 (same).

## CONCLUSION

　　　　For the foregoing reasons, defendants' motion to
dismiss is denied in part and granted in part without prejudice,
and with leave to amend the breach of express warranty claim in
conformity with this Memorandum and Order.  The Court grants
defendants' motion to dismiss plaintiff's claims for injunctive
relief, breach of a written warranty under the MMWA, breach of

express warranty, and unjust enrichment, and denies defendants'
motion to dismiss plaintiff's claims under GBL §§ 349 and 350.
Plaintiffs are granted leave to file an amended complaint within
fourteen (14) days of entry of this Memorandum and Order to
amend the breach of express warranty claim in conformity with
this Memorandum and Order.

   SO ORDERED.

                 /s/
                KIYO A. MATSUMOTO
                United States District Judge
                Eastern District of New York

Dated: January 27, 2021
   Brooklyn, New York